NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2425-23

JOYCE ROMINE and HARRY
ROMINE, her husband,

     Plaintiffs-Appellants,

v.

ROCKAWAY TOWNSHIP,
ROCKAWAY TOWNSHIP
RECREATION DEPARTMENT,
ROCKAWAY TOWNSHIP
MAINTENANCE AND
GROUNDS DEPARTMENT, and
ROCKAWAY TOWNSHIP
ENGINEERING, PLANNING &
CONSTRUCTION DEPARTMENT,

     Defendants-Respondents.

_____

Submitted April 29, 2025 – Decided May 22, 2025

Before Judges Smith and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2224-23.

Gold, Albanese & Barletti, LLC, attorneys for appellants (James N. Barletti, of counsel and on the briefs; Paul E. Kiel, on the briefs).

Dorsey & Semrau, LLC, attorneys for respondents (Fred C. Semrau, of counsel; Nicholas R. Wall, on the brief).

PER CURIAM

Plaintiffs Joyce[1] and Harry Romine[2] appeal the Law Division's order denying their motion for leave to file a notice of a late claim under the New Jersey Tort Claims Act (TCA)[3] and its order denying reconsideration. We affirm.

I.

We glean the uncontroverted facts from Joyce's certifications in support of plaintiffs' motion.

On April 22, 2023, plaintiff tripped and fell on a curb in the parking lot at Peterson Field in Rockaway, New Jersey. She suffered injuries to her right ankle

---

[1] Because plaintiff and her husband share a surname, we refer to Joyce by her first name and intend no disrespect in doing so.

[2] Joyce's spouse is a co-plaintiff in this case on a per quod claim. For simplicity, we use the term "plaintiff" to refer to Joyce and "plaintiffs" to refer to both parties.

[3] N.J.S.A. 59:1-1 to 12-3.

and right eye.[4]  Three days later, the Orthopedic Institute of New Jersey prescribed plaintiff a pneumatic walking boot for her ankle injury.  Plaintiff could not focus her thoughts or make informed decisions.

Plaintiff had right eye surgery on May 18, 2023, slightly more than five weeks after her fall.  As part of the surgery to repair her detached retina, doctors inserted a nitrous oxide bubble into her eye.  Her post-surgery instructions required her to lay face down in bed to ensure proper retina healing.  Her eye surgeons warned her that any sudden impact to her body could lead to total blindness in her right eye.  Doctors supplied plaintiff with a medical bracelet which would alert paramedics if she fell.  Between May 18 and the end of July, plaintiff could not drive or read a computer screen because her vision was blurred.

The TCA's ninety-day deadline requirement for plaintiff to serve a notice of tort claim upon defendants expired on July 21, 2023.[5]  It is undisputed that plaintiff could not read, or drive safely, and did not attend physical therapy for

_____

[4]  Plaintiff's affidavit describes her eye injury as "retinal detachment with multiple breaks, bullous superior retinal detachment with macula detachment along with a superior horseshoe tear of the retina, citreous hemorrhage of the right eye, neoplasm of the right retina . . . ."

[5]  N.J.S.A. 59:8-8.

A-2425-23

her ankle until October. Plaintiff first consulted with personal injury counsel in November 2023, over six months after the fall. She underwent a second eye surgery on December 8, 2023.

On December 14, 2023, plaintiffs moved pursuant to N.J.S.A. 59:8-9 for leave to file a notice of late claim upon various public entities which they alleged were liable for damages flowing from the parking lot fall. Plaintiffs named several defendants: Rockaway Township; the Township Recreation Department; and the Township Engineering, Planning & Construction Department. Plaintiffs supported their motion with Joyce's affidavit and copies of her medical records.[6] After defendants opposed, Joyce submitted a supplemental affidavit and a certification from plaintiffs' counsel. In her two affidavits, the first submitted on December 18, 2023 and the second submitted January 27, 2024, Joyce described her fall at a Rockaway Township recreational facility, where she was watching her grandson play baseball. She noted that she did not begin physical therapy on her ankle until October 6, 2023. Her second eye surgery took place on December 8, 2023.

---

[6] Plaintiff's medical records were not included in the record on appeal.

A-2425-23

The record shows that her December 18 affidavit was notarized by her counsel at the time, Robert F. Gold, Esq.  Sadly, Mr. Gold passed away a month later, on January 19, 2024.  Another attorney at Mr. Gold's firm immediately took over Joyce's case and promptly submitted her January 27 affidavit, along with a certification of counsel contending that there was a medically related delay, not attributable to plaintiff, between the date Joyce first consulted with the firm in November 2023 and the filing of her motion on December 18.

On February 9, 2024, the trial court heard argument.  The court considered whether plaintiffs had demonstrated an extraordinary circumstance which would justify a filing of a late claim under N.J.S.A. 59:8-9 and made findings.

The court first found that plaintiff's ankle injury, headaches, and lack of focus did not rise to the level of an extraordinary circumstance justifying the late filing.  The court next found that plaintiff's eye injury and subsequent surgery did not constitute an extraordinary circumstance.  The court stated:

> [Plaintiff] . . . says that it took until the end of July for this nitrous oxide bubble to dissipate and that during that process her vision was blurred.  So even if her vision is blurred at that point in time she says she couldn't drive and was unable to read documents.  Again, she could take some action of getting an attorney through making a phone call and the like.  But even if we give that benefit to her, she still doesn't take any action at the time when that situation clears up. She says during that process, "My vision was completely

blurred." And the problem apparently improves once this bubble dissipates, but not fully correcting her condition, thus requiring the second procedure.

. . . .

She doesn't [seek an attorney] in July when her vision gets better, she apparently is out and about and able to [get] all the medical treatment that she needs, she gets the boot that she needs, she is able to engage in physical therapy . . . three times a week starting in October, and so she is out and about engaging in her activities not to the extent of course [that she could prior to] these health issues, but she is able to engage and seek the redress for her situation.

The court also noted that plaintiff did not present any medical evidence to support her contention that she could not obtain counsel to pursue her legal claims. Finally, the court acknowledged the unfortunate circumstances of Mr. Gold's passing but found no facts in the record associated with counsel's death which would support a filing of a late notice of claim under the TCA.

The court did not reach the issue of prejudice to defendants, finding plaintiffs' failure to show extraordinary circumstances dispositive of the motion.

On March 28, 2024, the trial court denied plaintiffs' reconsideration motion for the reasons expressed in its February 9, 2024 opinion.

On appeal, plaintiffs argue that the trial court abused its discretion in finding that Joyce's medical condition did not qualify as an extraordinary

6

circumstance and that defendants provided no evidence they would be prejudiced by the late notice of claim.[7]

II.

"We review a trial court's finding of extraordinary circumstances under the abuse of discretion standard." Jeffrey v. State, 468 N.J. Super. 52, 58 (App. Div. 2021) (citing D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 147 (2013)).

> However, our Supreme Court has emphasized the need to examine "more carefully cases in which permission to file a late claim has been denied than those in which it has been granted, to the end that wherever possible cases may be heard on their merits, and any doubts which may exist should be resolved in favor of the application."
>
> [Ibid. (quoting S.E.W. Friel Co. v. New Jersey Turnpike Auth., 73 N.J. 107, 122 (1977)).]

"Although deference will ordinarily be given to the factual findings that undergird the trial court's decision, the court's conclusions will be overturned if

---

[7] Although argued below, plaintiff does not contend in her merits brief that Mr. Gold's unfortunate demise constitutes extraordinary circumstances warranting a leave to file a late notice of claim. We do not consider the argument here. "'[A]n issue not briefed is deemed waived.'" Arsenis v. Borough of Bernardsville, 476 N.J. Super. 195, 204 n.3 (App. Div. 2023) (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2023)).

they were reached under a misconception of the law."  D.D., 213 N.J. at 147 (citing McDade v. Siazon, 208 N.J. 463, 473-74 (2011)).

We also review a trial judge's decision on whether to grant or deny a motion for reconsideration under Rule 4:49-2 for an abuse of discretion.  Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).  "The rule applies when the court's decision represents a clear abuse of discretion based on plainly incorrect reasoning or failure to consider evidence or a good reason for the court to reconsider new information."  Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 4:49-2 (2025).

### III.

Plaintiffs contend that the trial court abused its discretion when it found that Joyce's medical condition did not constitute an "extraordinary circumstance."  Plaintiffs posit that the totality of Joyce's circumstances—her eye surgery leaving her bedridden and unable to read or drive, her headaches, and her ankle injury—demonstrated an extraordinary circumstance made her "unable to seek and confer with legal counsel" within the allotted statutory period.[8]

---

[8] Plaintiffs cite to an unpublished case in support of their position, see Bates v. Township of Jackson, No. A-0588-17T3 (App. Div. Oct. 26, 2018).  We are not bound by unpublished opinions, and we do not consider it here.  R. 1:36-3.

A-2425-23

We cannot conclude the trial court abused its discretion in finding that plaintiff's medical condition did not constitute an extraordinary circumstance. Therefore, we affirm substantially for the reasons expressed by the trial court in its oral statement of reasons supporting its order denying plaintiffs' motion for leave and its order denying reconsideration. We add the following comments.

Medical conditions can only satisfy the extraordinary circumstances standard if they are "severe or debilitating" and have a "consequential impact on the claimant's very ability to pursue redress and attend to the filing of a claim." D.D., 213 N.J. at 149-50; see, e.g., Jeffrey, 468 N.J. Super. at 55 (finding extraordinary circumstances where the plaintiff was rendered a quadriplegic after an accident and remained completely disabled and unable to perform even rudimentary movements); Mendez v. South Jersey Transp. Authority, 416 N.J. Super. 525, 533 (App. Div. 2010) (determining the plaintiff's injuries and memory loss sustained in a motor vehicle accident that required weeks of hospitalization qualified as an extraordinary circumstance); R.L. v. State-Operated School Dist., 387 N.J. Super. 331, 341 (App. Div. 2006) (allowing a late notice of tort claim where plaintiff contracted AIDS because of a sexual relationship with his teacher, learned he had the disease one year after his graduation from the school, and suffered mental distress and anguish); Maher v.

Cty. of Mercer, 384 N.J. Super. 182, 189-90 (App. Div. 2006) (finding extraordinary circumstances where the medical condition of a plaintiff, who contracted staph infection, was so severe that she was treated by an induced coma and not expected to survive).

Not all medical conditions meet the extraordinary-circumstances standard to justify filing a late tort-claim notice. In D.D., the plaintiff claimed to suffer from shock, stress, anxiety, fatigue, depression, the inability to perform as a public speaker, and overall deterioration of her physical and mental health resulting from the defendant's disclosure of her confidential health information in a press release. 213 N.J. at 137-39. The Court found "there [was] no evidence that these complaints were of sufficient immediate concern to her or were so significant in nature that she sought medical care to address them." Id. at 150. The Court stated the record lacked "evidence . . . that plaintiff was prevented from acting to pursue her complaint or that her ability to do so was in any way impeded by her medical or emotional state." Id. at 151.

In O'Neill v. City of Newark, 304 N.J. Super. 543, 554 (App. Div. 1997), we held that a plaintiff preoccupied with recovery and treatment efforts did not demonstrate extraordinary circumstances sufficient to justify a delay in filing a timely notice when he failed to show he had lacked the mental capacity to

contact an attorney. Among other things, plaintiff sustained: a bullet wound to his leg; days of hospitalization; loss of neurological function; home confinement; and loss of work for sixth months. Id. at 546-47. We affirmed the trial court's denial of the plaintiff's motion for leave to file a late tort-claim notice.

Assuming plaintiff's initial ankle and eye injuries, including surgery, and post-surgery recovery, were so severe as to prevent her pursuit of a timely claim within the ninety-day notice period pursuant to N.J.S.A. 59:8-8, her initial incapacity does not satisfactorily explain her months-long delay in filing the motion. Plaintiff certified that her "only concern in those months [after surgery] was doing whatever [she] had to do in order to improve [her] condition to the point where [she] could independently function on [her] own."

As we held in O'Neill, without plaintiff's affirmatively demonstrating the lack of mental capacity to contact an attorney, preoccupation with recovery alone will not justify a late tort-claim notice. 304 N.J. Super. at 554.

While we fully grasp the severity of the unfortunate, and doubtless painful, challenges plaintiff faced in the summer and fall of 2023, the record shows plaintiff was able to leave home to tend to her medical needs as of July and resumed certain other physical activities after October.

11

Those activities included traveling for in-person medical consultations for follow-up and physical therapy sessions. We note the record is devoid of certifications from Joyce's physicians on the question of lack of mental capacity to obtain counsel. The record is also devoid of plaintiff's cogent explanation for why she could not pursue some form of timely legal consultation in a manner which could have accommodated her medical circumstances. If plaintiffs were somehow unable to travel for legal consultation, we take judicial notice of the varied means available to her for prospective legal counsel to come to her, either in-person or virtually.

The record shows plaintiff has not met her burden under O'Neill to show lack of mental capacity to obtain legal counsel. Additionally, she cannot reconcile her prompt and important pursuit of medical advice and treatment for her injuries with her lack of prompt action to get counsel during the very same time period. Hence, we conclude, on this record, there are no "doubts which may exist [that] should be resolved in favor of the application." D.D., 213 N.J. at 169 (emphasis added).

Since we conclude plaintiff did not show facts sufficient to demonstrate extraordinary circumstances under N.J.S.A. 59:8-9, we need not reach the question of substantial prejudice. Finally, our review of the record reveals no

12

abuse of discretion by the trial court on reconsideration. We affirm the trial court's order denying reconsideration for the reasons expressed by the court without further comment.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2425-23